IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES DOUGLAS BRAGES,            )
                                 )
            Petitioner,          )        Civil Action No. 3:19-cv-188
                                 )
      v.                         )
                                 )        Magistrate Judge Patricia L. Dodge
SUPERINTENDENT OF                )
SCI BENNER TOWNSHIP, *et al.*,   )
                                 )
            Respondents.         )

**MEMORANDUM**

Before the Court[1] is the Petition for a Writ of Habeas Corpus (ECF 3) filed by state prisoner

James Douglas Brages ("Petitioner") under 28 U.S.C. § 2254. For the reasons set forth below, the

Court will deny the Petition and deny a certificate of appealability as to each claim.

## I.    Relevant Background[2]

In this habeas case, Petitioner challenges the judgment of sentence imposed on him by the

Court of Common Pleas of Cambria County at criminal docket number CP-11-CR-1574-2012

following his convictions of theft by unlawful taking, receiving stolen property, and possessing

instruments of crime. The charges stemmed from an incident that occurred on June 5, 2012, when

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] Respondents electronically filed as exhibits to their Answer (ECF 35) relevant parts of the state court record, including the transcripts of Plaintiff's preliminary and sentencing hearings, as well as the hearings held on his pretrial suppression motion, post-sentence motion and during his Pennsylvania's Post Conviction Relief Act ("PCRA") proceeding. The documents will be cited to by their exhibit and ECF page number as follows: "Resp's Ex. __, ECF at ___." The transcript for the first day of Petitioner's trial ("Trial Tr. I") was electronically filed at Resp's Ex. 6. The transcript for the second day of his trial ("Trial Tr. II") was not filed electronically, but it is in the hard copy of the Court of Common Pleas file for Petitioner's criminal case, which the Respondents also submitted to this Court.

more than $8,000.00 in cash and $55.00 in rolled coins was stolen from the house of Norman Boring.

The trial court summarized the background of this case as follow:

Sometime around 2:00 PM on June 5, 2012, David R. Petersen ("Petersen") heard the front doorbell ring. He put down his tools, exited the basement workshop, and began to climb the basement stairs. Suddenly, the doorbell rang frantically. By the time he ascended from the basement and entered the kitchen, however, the frantic doorbell ringing ceased and a new sound reverberated through his home. Someone was working the door handle on his heavy front door—the same front door which not only acts as a buffer between the outer screen door and the inside of his home but also the same front door that abuts the front doorbell.

As Petersen proceeded from the kitchen to the living room, he spotted a six-foot man outfitted in a dark baseball cap, dark clothes, and a dark backpack standing by his home's entrance. The stranger likewise spied Petersen and calmly stepped away from the door. Petersen asked the stranger how he could assist him. The stranger inquired whether he knew of a bicycle path that snaked down the hillside that runs alongside Johnstown's Inclined Plane. Peterson knew of no such path. Nevertheless, Petersen instructed the stranger that if someone would know of such a path, it would be a Westmont Recreational worker. Consequently, Petersen directed the stranger to the maintenance building of the Westmont Recreational Department ("WRD") owns where he would be able to find a worker to ask. The WRD maintenance building is a snowball throw from Petersen's driveway.

The stranger withdrew from Petersen's porch, hopped onto his bicycle, and began to travel toward the maintenance building. Petersen watched the stranger's movement from inside his home and then noticed something very curious. The stranger never went to the WRD building as Petersen directed him. On the contrary, he entered WRD's driveway, made an immediate U-turn, and proceeded down Edgehill Drive toward Norman Boring's ("Boring") home. Petersen's suspicions tingled throughout his body. He called 911 immediately and reported a description of the man he encountered and the events that accompanied their meeting.

Shortly thereafter, Samuel Mardis ("Mardis") spotted a man who matched Petersen's description: baseball cap, dark clothes, backpack, and a bicycle. More specifically, Mardis saw the stranger ride down Boring's driveway and dismount from his bicycle. Next, the stranger removed his backpack and hat, surveyed his surroundings, and walked around the side of Boring's house—outside of Mardis's view. Later, Mardis spied the stranger again. This time the stranger was on Boring's deck and was peering into the home's windows. Mardis was sitting in a recliner on his rear porch, which faces Boring's home—a football field away. Eventually, the stranger walked around the house and disappeared again from Mardis's view. Mardis did not think of the stranger again that day.

While the stranger's movements around Boring's home captured the attention of Mardis, a bulletin circulated alerting the local authorities to be on the lookout for the suspicious person Petersen reported. Patrolman Christopher Kesslak

("Officer Kesslak") was one of the officers in the area who received that report. Approximately forty-five minutes after Petersen and the stranger met, Kesslak noticed a man who fit Petersen's description exiting the "Sweet Things" confectionary store with an iced-tea in hand. The man wore a baseball cap, dark clothing, dark backpack, and had a bicycle. The man departed the public space near the store and proceeded to ride his bike down the hill toward the city of Johnstown before Officer Kesslak could stop him. After Officer Kesslak stopped him some distance from the store, he instructed the stranger that he received a report pertaining to a suspicious person and asked the stranger to provide identification. The stranger complied and handed Officer Kesslak a Pennsylvania driver's license. That license identified the stranger as [Petitioner].

In light of [Petitioner's] mixed demeanor and the fact that [he] kept inching closer to Officer Kesslak despite the latter's repeated admonitions to "stand back, stand back, wait right there until Officer Fisher arrive[s] on [the] scene," Officer Kesslak did not secure [Petitioner] immediately. Only after Officer Fisher arrived did Officer Kesslak secure [Petitioner] and patted him down for contraband. That pat down revealed large amounts of cash in [Petitioner's] front pockets—so much so that the cash created bulges in the pocket areas. After the pat down, Officer Kesslak asked [Petitioner] may they search his backpack. [Petitioner] consented and Officer Kesslak discovered a pry bar, screwdriver, nippers, utility knife, hammer, hacksaw, safety glasses, work gloves, rubber coated gloves, duct tape, and rolls of coins in tan-and-orange and tan-and-green wrappings. Officer Kesslak returned the items to [Petitioner], detained him, and transported him to his precincts.

Later, a more thorough inventory ensued which exposed two glaring facts. First, [Petitioner] did not know how much money he possessed on his person. Rather, his suppositions escalated each time the officers' counting revealed a higher dollar amount. Ultimately, the sum was $8,927.48. Second, the roll of coins in the tan-and-orange and tan-and-green wrappings totaled $55.00. Both of these facts are important because of the 10:23 AM burglary report the 911 center received the following day—June 6, 2012.

On that day, Boring called the 911 center to report he was burglarized and was missing approximately $9,000.00. Officer Kesslak investigated that call and asked Boring whether he kept and coins in colored wrappings. Boring replied he did and stated he knew for a fact that he had $170.00 in wrapped coins. Boring proceeded to count the remaining coins in Officer Kesslak's presence and discovered he was $55.00 short—or the exact amount that was found on [Petitioner's] person.

(Resp's Ex. 11, Trial Ct. Op., ECF 35-11 at 1-4.)

The Commonwealth charged Petitioner with the crimes of burglary, criminal trespass, theft by unlawful taking of movable property, receiving stolen property and possessing instruments of crime. Assistant Public Defender Patricia Moore ("trial counsel"), who had about 20 years of

experience, represented Petitioner during his pretrial and trial proceedings. (Resp's Ex. 22, PCRA Hr'g Tr., ECF No. 35-22 at 16.)

Petitioner, through counsel, filed a pretrial motion in which he argued that Officer Kesslak lack reasonable suspicion to stop Petitioner and therefore the trial court should suppress all the physical evidence and statements which sprung out of that stop. The trial court held a hearing on that motion and then denied it. (Resp's Ex. 4, Sup. Hr'g Tr., ECF 35-4 at 1-80; Resp's Ex. 5, Trial Ct. Op., ECF 35-5 at 1-13.)

Petitioner's two-day trial was held in February 2013. (Resp's Ex. 6, Trial Tr. I, ECF 35-6 at 1-172; Trial Tr. II at 1-70.) The Commonwealth presented testimony from six individuals, including Officer Kesslak, Boring (the victim), and Petersen and Mardis (Boring's neighbors). Petitioner testified in his own defense. He stated that he was carrying in his backpack a pry bar, screwdriver, nippers, utility knife, hammer, hacksaw, safety glasses, work gloves, rubber coated gloves, and duct tape because he worked for a roofing company and was on call on June 5, 2012. (Trial Tr. II at 4-5, 12-15.) He admitted that he was the individual who spoke with Petersen on his porch that day. (*Id.* at 7.) Petitioner stated that of the cash found on his person, $6,000.00 of it was from money he received from his tax return and the rest of it he earned from working. (*Id.* at 11.)

At the conclusion of the trial, the jury convicted Petitioner of theft by unlawful taking, receiving stolen property, and possessing instruments of crime. It found him not guilty of burglary and criminal trespass. The trial court sentenced him to a term of 36 to 72 months imprisonment on the receiving stolen property count, to be followed by a term of 12 to 24 months on the possessing instruments of crime.

Petitioner, through counsel, filed a post-sentence motion that the trial court denied. (Resp's Ex. 11, Trial Ct. Op., ECF 35-11 at 1-13.) He then filed an appeal with the Superior Court of

4

Pennsylvania. Attorney John Lovette ("direct appeal counsel"), who also worked in the Public Defender's Office, represented Petitioner in this appeal in which he raised these claims:

1. The trial court's sentence was unduly harsh because it imposed consecutive rather than concurrent sentences;

2. The Commonwealth introduced insufficient evidence to support Petitioner's convictions for receiving stolen property and possessing instruments of crime;

3. Petitioner's convictions were against the weight of the evidence because of the jury's inconsistent verdicts, namely its decision to find him guilty of some crimes but not guilty of burglary and criminal trespass; and

4. The trial court erred in denying Petitioner's motion to suppress the evidence against him because the initial stop lacked reasonable suspicion.

(Resp's Ex. 12, Appellant Br., ECF 35-12 at 1-30.)

The Superior Court affirmed Petitioner's judgment of sentence in *Commonwealth v. Brages*, No. 1091 WDA 2013 (Pa. Super. Ct. Apr. 30, 2014) ("*Brages I*"). (Resp's Ex. 16, ECF 35-16 at 1-14.) It denied each of Petitioner's claims on the merits except for the sentencing claim, which it held was waived. (*Id.*)

After his direct appeal concluded, Petitioner filed in state court a *pro se* PCRA petition. (Resp's Ex. 20, ECF 35-20 at 1-36.) The trial court, now the PCRA court, appointed Attorney Timothy S. Burns ("PCRA counsel") to represent Petitioner and he filed an Amended PCRA petition and raised these claims:

1. Trial counsel was ineffective for failing to:

    a. present at trial testimony from Petitioner's ex-wife, Melanie Pinette, to corroborate Petitioner's trial testimony that the cash found on his person on June 5, 2012, belonged to him and that was from a tax refund;

    b. request that the trial court give a cautionary jury instruction on Mardis's testimony under *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954); and

    c. request a mistrial in response to the prosecutor's objectional closing remarks.

2. Direct appeal counsel was ineffective for failing to file an Appellate Rule 2119(f) statement challenging the discretionary aspect of sentencing.

(Resp's Ex. 21, ECF 35-21 at 1-11.)

The PCRA court held an evidentiary hearing at with trial counsel and Petitioner testified. (Resp's Ex. 22, PCRA Hr'g Tr., ECF 35-22 at 1-42.) Following this hearing, the PCRA court issued an opinion and order denying each of Petitioner's claims on the merits. (Resp's Ex. 23, PCRA Ct. Op., ECF 35-23 at 1-11.)

Petitioner, though counsel, filed an appeal with the Superior Court. He claimed that the PCRA court erred in denying the four claims of ineffective assistance set forth above at Claims 1(a), (b), (c) and 2. (Resp's Ex. 26, Appellant's Br., ECF 35-20 at 1-60.) The Superior Court denied Petitioner's claims on the merits and affirmed the PCRA court's order. (Resp's Ex. 28, *Commonwealth v. Brages*, No. 935 WDA 2018 (Pa. Super. Ct. Mar. 15, 2019) ("*Brages II*"), ECF 35-28 at 1-10.)

After the Pennsylvania Supreme Court denied a petition for allowance of appeal (Resp's Ex. 32, ECF 35-32 at 1), Petitioner filed with this Court his Petition for a Writ of Habeas Corpus (ECF 3) in which he raises numerous claims for relief, which he explains in more detail in his 59-page Brief in Support of Writ of Habeas Corpus (ECF 31). Respondents have filed an Answer (ECF 35) and the relevant state court records and Petitioner has filed his Reply (ECF 36).

II.   **Discussion**

A.   Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. It permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable.

*Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Indeed, the Court is bound by the state courts' determinations of state law. *See*, *e.g.*, *Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting *Estelle*, 502 U.S at 67-68).

It is Petitioner's burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017). There are other prerequisites that he must satisfy before he can receive habeas relief on his claims (for example, the burden imposed on him by the standard of review enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") which is discussed below), but, ultimately, Petitioner cannot receive federal habeas relief unless he shows that he is in custody in violation of his federal constitutional rights. 28 U.S.C. § 2254(a); *see, e.g.*, *Vickers*, 858 F.3d at 849.

B.      Standard of Review

In 1996, Congress made important amendments to the federal habeas statutes with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Among other things, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). It reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

A finding of fact made by a state court has always been afforded considerable deference in a federal habeas proceeding. AEDPA continued that deference and mandates that "a determination

of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).
Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing
evidence." *Id.*

AEDPA also put into place a new standard of review, which is codified at 28 U.S.C.
§ 2254(d). It applies "to any claim that was adjudicated on the merits" by the Superior Court and
it prohibits a federal habeas court from granting relief unless the petitioner established that the
Superior Court's "adjudication of the claim":

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For the purposes of § 2254(d), a claim has been "adjudicated on the merits
in State court proceedings" when the state court (here, the Superior Court) made a decision that
finally resolves the claim based on its substance, not on a procedural, or other, ground. *See, e.g.*,
*Richter*, 562 U.S. at 98-100; *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

The majority of federal habeas claims need only be analyzed under § 2254(d)(1), which
applies to questions of law and mixed questions of law and fact. In applying § 2254(d)(1), this
Court's first task is to ascertain what law falls within the scope of the "clearly established Federal
law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1). It is
"'the governing legal principle or principles set forth by the Supreme Court at the time the state
court renders its decision.'" *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 280
(2016) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)).

Once the "clearly established Federal law, as determined by the Supreme Court of the
United States" is ascertained, this Court must determine whether the Superior Court's adjudication

of the claim at issue was "contrary to" that law. *Williams*, 529 U.S. at 404-05 (explaining that the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have independent meaning). A state-court adjudication is "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States" § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams*, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," *id.* at 406.

A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. *Williams*, 529 U.S. at 406. Thus, the issue in most federal habeas cases is whether the adjudication by the state court survives review under § 2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case.'" *Dennis*, 834 F.3d at 281 (quoting *Williams*, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. *Id.* He must show that it "'was *objectively* unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must prove that the Superior Court's decision "*was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement*." *Richter*, 562 U.S. at 103 (emphasis added). As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer, supra*, at 75, 123 S. Ct. 1166.

9

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Id.* at 102.

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013).[3] "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." *Dennis*, 834 F.3d at 281 (quoting § 2254(d)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see Rice v. Collins*, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question,

---

[3] Sections 2254(d)(2) and (e)(1) "express the same fundamental principle of deference to state court findings[,]" and federal habeas courts "have tended to lump the two provisions together as generally indicative of the deference AEDPA requires of state court factual determinations." *Lambert*, 387 F.3d at 235. The Court of Appeals has instructed that § 2254(d)(2), when it applies, provides the "overarching standard" that a petitioner must overcome to receive habeas relief, while 2254(e)(1) applies to "specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision." *Id.*

'on habeas review that does not suffice to supersede'" the state court's adjudication. *Wood*, 558 U.S at 301 (quoting *Collins*, 546 U.S. at 341-42).

If the Superior Court did not adjudicate a claim on the merits, the Court must determine whether that was because Petitioner procedurally defaulted it.[4] If the claim is not defaulted, or if Petitioner has established grounds to excuse his default, the standard of review at § 2254(d) does not apply and the Court reviews the claim de novo. *See, e.g.*, *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). However, in all cases and regardless of whether the standard of review at § 2254(d) applies, the state court's factual determinations are presumed to be correct under § 2254(e)(1) unless Petitioner rebuts that presumption by clear and convincing evidence. *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010); *Nara v. Frank*, 488 F.3d 187, 201 (3d Cir. 2007) ("the § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d).") (citing *Appel*, 250 F.3d at 210).

C.    Exhaustion and Procedural Default

The "exhaustion doctrine" requires that a state prisoner raise his federal constitutional claims in state court through the proper procedures before he litigates them in a federal habeas petition. *See, e.g.*, *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

---

[4] The doctrine of procedural default is discussed immediately below in section II.C.

11

Additionally, and importantly, a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" in order to satisfy the exhaustion requirement. *O'Sullivan*, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case such as this one must have first presented every federal constitutional claim raised in his federal habeas petition to the Superior Court either on direct or PCRA appeal. *See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730. To summarize, it provides that a Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (a) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claims on the merits because state procedural rules (such as, for example, the PCRA's one-year statute of limitations) bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan v. Boerckel*, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

A petitioner may avoid the default of a claim by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]"[5] *Coleman*, 501 U.S. at 750. "'Cause'

---

[5] A petitioner may also overcome his default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995). In only the extraordinary case will a petitioner be able to establish a "fundamental miscarriage of justice," and this is not one of the rare cases in which that rule is implicated.

under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original). A petitioner who defaulted a claim of trial court error may attempt to establish "cause" for the default by arguing that trial counsel was ineffective for failing to challenge the trial court's error. Importantly, however, in order to do so the petitioner must have properly exhausted that claim of trial counsel's ineffectiveness in state court. *See, e.g.*, *Edwards*, 529 U.S. 451-53 (a petitioner can procedurally default the claim of trial or direct appeal counsel's ineffectiveness that he is relying upon to establish cause for the default of another claim).

Moreover, the general rule is that, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely on PCRA counsel's ineffectiveness to establish the "cause" necessary to overcome the default of a federal habeas claim. *Id.*; *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017). In *Martinez v. Ryan*, 566 U.S. 1 (2012) the Supreme Court announced a narrow exception to this rule. In relevant part, it held that in states like Pennsylvania, where the law requires that claims of ineffective assistance of trial counsel be raised for the first time in a collateral proceeding,[6] a petitioner may overcome the default of a *claim of trial counsel's ineffectiveness.* To do so, the petitioner must show: (1) the defaulted claim of trial counsel's ineffectiveness is "substantial" and (2) PCRA counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984) for (3) failing to raise that claim in the "initial review collateral proceeding" (meaning to the PCRA court). *Martinez*, 566 U.S. at 17. The holding in *Martinez* is

---

[6] In Pennsylvania, a defendant typically may not litigate ineffective assistance of trial counsel claims on direct appeal. Such claims must be raised in a PCRA proceeding. *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002) (abrogated in part on other grounds by *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021)).

limited to defaulted claims asserting that *trial counsel was ineffective*. *See, e.g.*, *Davila*, 137 S. Ct. at 2062-70. It does not apply to any other type of defaulted claim. *Id.*

If the Superior Court did not adjudicate a claim on the merits, this Court must determine whether that was because Petitioner procedurally defaulted it. If the claim is not defaulted, or if Petitioner has established grounds to excuse his default, the standard of review at 28 U.S.C. § 2254(d) does not apply and the Court reviews the claim de novo.[7] *See, e.g.*, *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). At the same time, as previously explained, this Court applies a *de novo* review only if the Superior Court did not provide an alternative adjudication on the merits. *See*, *e.g.*, *Rolan v. Coleman*, 680 F.3d 311, 320 (3d Cir. 2012).

D.    The *Strickland* Standard

Most of Petitioner's claims assert that trial counsel provided him with ineffective assistance. The Supreme Court recognized in *Strickland* that a defendant's Sixth Amendment right to the assistance of counsel for his defense entails the right to be represented by an attorney who meets at least a minimal standard of competence.[8] 466 U.S. at 685-87. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Titlow*, 571 U.S. at 24.

---

[7] In all cases and no matter if the standard of review at § 2254(d) applies, a state court's factual determinations are presumed to be correct under § 2254(e)(1) unless Petitioner rebuts that presumption by clear and convincing evidence. *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010); *Nara v. Frank*, 488 F.3d 187, 201 (3d Cir. 2007) ("the § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d).") (citing *Appel*, 250 F.3d at 210).

[8] Since the Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" *Evitts v. Lucey*, 469 U.S. 387, 392 (1985) (quoting *Griffin v. Illinois*, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, *id.* at 396, the ineffective assistance of counsel standard of *Strickland* applies to a claim that direct appeal counsel was ineffective. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *United States v. Cross,* 308 F.3d 308, 315 (3d Cir. 2002).

Under *Strickland*, it is Petitioner's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" *Titlow*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690); *Richter*, 562 U.S. at 104 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting *Strickland*, 466 U.S. at 689). Counsel cannot be deemed ineffective for failing to raise a meritless claim. *See, e.g.*, *Preston v. Sup't Graterford SCI*, 902 F.3d 365, 379 (3d Cir. 2018).

*Strickland* also requires that Petitioner demonstrate that he was prejudiced by counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

The Supreme Court in *Strickland* noted that although it had discussed the performance component of an effectiveness claim before the prejudice component, there is no reason for an analysis of an ineffectiveness claim to proceed in that order. 466 U.S. at 697. If it is more efficient to dispose of an ineffectiveness claim because the petitioner failed to meet his burden of showing prejudice, a court need address only that prong of *Strickland. Id.*

Pennsylvania courts typically articulate *Strickland*'s standard in three parts, while federal courts set it out in two. The legal evaluation is the same, and the differences merely reflect a

stylistic choice on the part of state courts. *See*, *e.g.*, *Commonwealth. v. Mitchell*, 105 A.3d 1257, 1266 (Pa. 2014) ("this Court has divided [*Strickland*'s] performance component into sub-parts dealing with arguable merit and reasonable strategy. Appellant must, therefore, show that: the underlying legal claim has arguable merit; counsel had no reasonable basis for his act or omission; and Appellant suffered prejudice as a result."); *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117-18 (Pa. 2012) ("In order to obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland*[.]").

> E.   Petitioner's Claims

**Insufficient Evidence Claim**

Petitioner contends that the Commonwealth introduced insufficient evidence to support his convictions of receiving stolen property and possessing of instruments of crime. (ECF 3 at 5; ECF 31 at 59.) He raised this claim in his direct appeal, and the Superior Court denied it on the merits as follows:

> With respect to his conviction for receiving stolen property, [Petitioner] argues that the Commonwealth failed to prove that any items in his possession were stolen. [Petitioner's] Brief at 10. [Petitioner] contends that the items found on his person, cash and coins, are "generic" and were never proven to belong to Boring, the alleged victim. *Id.* According to [Petitioner], because the jury did not convict him of burglary or criminal trespass, the Commonwealth did not produce satisfactory evidence that ever placed [Petitioner] in Boring's home, and therefore there is no proof that the cash and coins on his person belonged to Boring. *Id.*
> 18 Pa.C.S.A. § 3925(a) provides as follows:
>
> > (a) Offense defined.—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.
>
> 18 Pa.C.S.A. § 3925(a). A conviction for receiving stolen property may be sustained only if the evidence is sufficient to prove beyond a reasonable doubt that (1) the property was stolen, (2) the accused received the property, and (3) the accused knew or had reasonable cause to know that it was stolen. *Commonwealth v. Phillips*, 392 A.2d 708, 709 (Pa. Super. 1978). "It is the receipt, disposition, or

possession of the stolen property which constitutes the offense of receiving stolen property." *Commonwealth v. Brady*, 560 A.2d 802, 806 (Pa. Super. 1989).

We disagree with [Petitioner's] contention that cash or coins, because they are "generic," cannot constitute stolen property for purposes of section 3925(a). In at least one reported case, *Commonwealth v. Breslin*, 165 A.2d 415, 418 (Pa. Super. 1960), this Court affirmed a conviction for receiving stolen cash and coins. Moreover, the Commonwealth produced sufficient evidence to demonstrate that the items found on [Petitioner's] person belonged to Boring. Specifically, [Petitioner] possessed the precise dollar amount in rolled coins that Boring reported as missing from his home ($55), and the description of those rolled coins (tan/orange and tan/green wrappers) matched the rolled coins found on [Petitioner's] person. Likewise, the amount of cash Boring reported as missing from his home ($9,000) was nearly identical to the amount of cash in [Petitioner's] possession at the time of his arrest ($8,927). This evidence was sufficient to prove that the coins and cash on [Petitioner's] person were stolen from Boring's home.

With respect to his conviction for possessing instruments of crime, [Petitioner] argues that he introduced evidence at trial that he used the tools found in his possession (including a pry bar, screwdriver, nippers, utility knife, hammer, and a hacksaw) in his profession as a roofer, and that the Commonwealth did not introduce any evidence of his intent to use them for criminal purposes. [Petitioner's] Brief at 10.

18 Pa.C.S.A. § 907(a) provides that a "person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally. 18 Pa.C.S.A. § 907(a). 18 Pa.C.S.A. § 907(d)(2) defines an "Instrument of crime" as "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S.A. § 907(d)(2).

Viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court that the Commonwealth introduced sufficient evidence to show that [Petitioner] had the intent to use the tools found in his possession for criminal purposes. Witnesses observed [Petitioner] suspiciously walking around Boring's house, including on the deck and peering into the windows. Amounts of coins and cash matching the amounts Boring later reported missing from his home thus provide sufficient evidence to prove that [Petitioner] intended to use the tools in his backpack to enter into Boring's home with the purpose of committing crimes while inside.

(Resp's Ex. 16, *Brages I*, ECF 35-16 at 6-9.)

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze the Superior Court's adjudication of this claim is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Supreme Court explained that "[t]he Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt" of each element of the

offense. 443 U.S. at 309. "This reasonable doubt standard of proof requires the finding of fact 'to reach a subjective state of *near certitude* of the guilt of the accused." *Travillion v. Sup't Rockview SCI*, 982 F.3d 896, 902 (3d Cir. 2020) (quoting *Jackson*, 443 U.S. at 315) (emphasis supplied by Court of Appeals).

"Under *Jackson*, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 319) (emphasis supplied by the Supreme Court). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319).

When it denied this claim, the Superior Court applied the Pennsylvania equivalent of the *Jackson* standard. (Resp's Ex. 16, *Brages I*, ECF 35-16 at 6); *see also Evans v. Court of Common Pleas, Delaware Cnty.*, 959 F.2d 1227, 1233 (3d Cir. 1992) (the test for insufficiency of the evidence is the same under both Pennsylvania and federal law). Because it applied the correct legal standard, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1). *Williams*, 529 U.S. at 406.

The next inquiry for this Court, then, is whether the Superior Court's decision was an "unreasonable application of" *Jackson* under § 2254(d)(1). The Supreme Court has stressed to federal habeas courts conducting this analysis that:

> [w]e have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the…verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, __ (2011) (*per*

*curiam*) (slip op., at 1). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. __, __ (2010) (slip op., at 5)).

*Coleman*, 566 U.S. at 651.

Petitioner has not shown that the Superior Court's adjudication of this claims was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Thus, Petitioner has not satisfied his burden of proving that the Superior Court's decision to deny his challenge to the sufficiency of the evidence was an "unreasonable application of" *Jackson*.

Finally, to the extent that Petitioner's actual challenge is that the jury's verdict *was against the weight of the evidence*, such a claim is purely one of state law that is distinct from a federal due process claim, and, as such, it is not cognizable in federal habeas corpus. *Tibbs v. Florida*, 457 U.S. 31, 37-45 (1982) (weight of evidence claims raise questions of credibility; it is different from a claim that the evidence was insufficient to support the conviction); *McKinnon v. Sup't, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus[.]"); *see, e.g.*, *Anger v. Wenerowicz*, No. 2:11-cv-1421, 2012 WL 5208554, *2 (W.D. Pa. Sept. 10, 2012) (a claim that the verdict was against the weight of the evidence "is simply not a cognizable claim in federal habeas proceedings as it raises solely a state law claim."), report and recommendation adopted by 2012 WL 5208654 (W.D. Pa. Oct. 22, 2012); *Davis v. Lavan*, No. 2:04-cv-456, 2004 WL 2166283, *9 (E.D. Pa. Sept. 23, 2004) (same).

In conclusion, Petitioner's claim that the Commonwealth introduced insufficient evidence to support the jury's verdict is denied because the Superior Court's adjudication of it withstands

review under § 2254(d)(1). To the extent that Petitioner's actual challenge is that the jury's verdict was against the weight of the evidence, that claim is denied because it is a state law claim that is not cognizable under § 2254.

### Claims that PCRA Counsel Was Ineffective

Petitioner raises several stand-alone claims that PCRA counsel was ineffective. (ECF 31 at 11-33.) Petitioner did not have a federal constitutional right to counsel during his PCRA proceeding. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). As a result, he cannot receive habeas relief on a claim that his PCRA counsel was ineffective, a fact codified by statute at 28 U.S.C. § 2254(i), which expressly provides that "[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254." *See also Coleman*, 501 U.S. at 752-53 ("There is no constitutional right to an attorney in state post-conviction proceedings.... Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.")[9]

Thus, Petitioner's stand-alone claims that PCRA counsel was ineffective are denied because they are not cognizable grounds for federal habeas relief.

### Claims that Trial Counsel Was Ineffective

1. Failure to Request a *Kloiber* Instruction

Petitioner contends that trial counsel was ineffective because she did not request that the trial court give a cautionary jury instruction on Mardis's allegedly "inherently weak identification testimony" under *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954) and its progeny. (ECF 31 at 19-24.) In *Kloiber*, the Supreme Court of Pennsylvania held:

---

[9] In this federal habeas case, PCRA counsel's alleged ineffectiveness is relevant only to the extent that it is one of the factors that must be established to avoid a default of a claim of trial counsel's ineffectiveness under *Martinez*.

where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions. . . the court should warn the jury that the testimony as to identity must be received with caution.

106 A.2d at 826-27 (citations omitted).

The Superior Court denied this claim on the on the merits in the PCRA proceeding. It rejected Petitioner's underlying contention that he was entitled to a *Kloiber* instruction and also determined that Petitioner suffered no prejudice by the absence of the instruction. The Superior Court held:

Here, Mardis did not specifically identify [Petitioner] as the individual he observed. Indeed, in his testimony, Mardis stated that he did not see the person's face, and could not identify the individual:

Q      ... Did anything out of the usual, did you see anything out of the usual on that day as you were sitting on your back porch?

A      I saw a man wearing dark clothes and a backpack, ball cap on a bicycle....

- - -

Q      Were you ever able to see his face?

A      No, I was not.

Q      Just his clothes, his backpack?

A      His clothes, yes, and the bicycle.

N.T., 2/11/13, at 68-71. Thus, the requisite for a *Kloiber* instruction, an eyewitness identification, was not met, and [Petitioner's] underlying claim lacks merit. Moreover, [Petitioner] failed to establish that he was prejudiced. Accordingly, [trial counsel] was not ineffective for failing to request a *Kloiber* instruction.

(Resp's Ex. 28, *Brages II*, ECF 35-18 at 6-7) (internal citations omitted.)

The Superior Court's decision that Petitioner was not entitled to a *Kloiber* instruction under Pennsylvania law is a state law determination that is not subject to review by this Court. *See, e.g.*, *Priester*, 382 F.3d at 402; *see also Real v. Shannon*, 600 F.3d 302, 309-10 (3d Cir. 2010). For this

reason alone Petitioner's claim that trial counsel was ineffective for not requesting a *Kloiber* instruction fails. *See, e.g.*, *id.* (since the federal habeas court was bound by the state court's determination that the instruction given at his trial comported with state law, the petitioner cannot satisfy the *Strickland* standard).[10]

The claim also fails because Petitioner has not met the burden imposed on him by AEDPA's standard of review at § 2254(d)(1), which is the applicable provision that applies to this Court review of this claim. The Superior Court applied the correct *Strickland* analysis when it evaluated this claim. (Resp's Ex. 28, *Brages, II*, ECF 35-28 at 3-4.) Thus, Petitioner cannot establish that the Superior Court's adjudication was "contrary to" *Strickland*. *Williams*, 529 U.S. at 406. Nor has Petitioner shown that the Superior Court's adjudication was an "unreasonable application of" *Strickland*, since trial counsel did not perform deficiently, and Petitioner suffered no prejudice, when she did not request a jury instruction that did not apply to the circumstances of his case.

Based on the above, Petitioner's claim that trial counsel was ineffective for not requesting a *Kloiber* instruction is denied because this Court is bound by the Superior Court's state law determination that the instruction did not apply to Petitioner's case and also because its decision withstands review under AEDPA at § 2254(d)(1).

---

[10] The Court further notes that trial counsel testified at the PCRA evidentiary hearing that she felt the standard jury instruction given at Petitioner's trial, along with the points she made during her closing argument about eyewitness identification or lack thereof, was preferable from a tactical perspective over requesting a *Kloiber* instruction. (Resp's Ex. 22, Suppression Hr'g Tr., ECF 35-22 at 10-11.) Thus, counsel articulated a sound basis for her approach to this issue, which also precludes a finding of ineffectiveness, particularly given the lack of a specific identification of Petitioner by Mardis.

2.  <u>Failure to Move for a Mistrial</u>

During the Commonwealth's closing argument, the prosecutor urged the jury not to credit Petitioner's trial testimony that he was carrying the tools in his backpack because he was "on call" for a roofing job and might need the tools for his work. (Trial Tr. II at 5, 12-15.) The prosecutor stated that when he was in college he was a member of the local Carpenter Union and therefore he had knowledge about what tools are used to tear off a roof. He then began to explain to the jury why the tools Petitioner had in his backpack would not have been used for Petitioner's stated purpose. (*Id.* at 37-38.)

Trial counsel interrupted the prosecutor's argument and objected, stating: "None of this is in evidence. He is testifying during his closing. He is describing roofing bolts and techniques and other things. If he wanted that to be evidence, he should have cross-examined my client about it." (*Id.* at 38.) The trial court sustained trial counsel's objection and immediately instructed the jury:

> Ladies and gentlemen, there is just a simple principle of law I want to reiterate for you. When I give you my charge when [the prosecutor] is done, I will go into this in great detail. You can only decide this case upon the evidence that you hear from the witness stand. I said that counsel will argue to you their recollection of the facts and if you think you recall the facts differently, you rely on your recollection but you can only consider evidence that you heard from the witness stand, from witnesses under oath or by viewing the various exhibits for trial.

(*Id.* at 39-40.)

The prosecutor then returned to giving his closing argument by briefly discussing another matter before ending his summation. (*Id.* at 40.) The trial court then gave its closing instructions, during which it reminded the jurors once again that they "are to consider only evidence which is presented in court" and that they may not rely on "any matters which are not evidence." (*Id.* at 43.) The trial court reiterated that "[y]ou should be guided by each lawyer's arguments to the extent they are supported by the evidence and insofar as they aid you in applying your own reason and

common sense. However, you are not required to accept the arguments of either lawyer. It is for

you and you alone to decide the case based on the evidence as it was presented from the witness

stand and in accordance with the instructions I am now giving you." (*Id.* at 51.)

Petitioner claims that trial counsel was ineffective because she should have moved for a

mistrial when the prosecutor made his improper remarks. When trial counsel testified about this

claim at the PCRA hearing, she explained that she did not think that there was any basis to move

for a mistrial because the trial court immediately gave the curative instruction. (Resp's Ex. 22,

PCRA Hr'g Tr., ECF 35-22 at 12.) Trial counsel also explained that she believed the trial was

going well for the Petitioner because his testimony had been strong. She thus did not think it would

have been in his best interests to assert that the trial should end in a mistrial and that he must be

retried. She stated:

> I thought that the trial had gone well and I thought that [Petitioner] testified
> extremely well…. I also thought that the judge's, you know – the objection and the
> curative instruction had, I thought, thrown [the prosecutor] off a bit in his closing.
> That was not my intent. I didn't want to be—it just happened that way. [The
> prosecutor] got interrupted. He got a little bit thrown off, maybe lost a little bit of
> his thread and I thought strategy wise, no, there was—first of all, I didn't think there
> was any basis [to move for a mistrial.] I didn't think [the prosecutor's statements]
> unduly prejudiced the jury in any way and certainly the judge's instructions cured
> it. Also, I did not think it would be to our advantage to do that.

(*Id.*)

When it denied this claim, the PCRA court held that trial counsel articulated a reasonable

basis for not moving for a mistrial, explaining:

> Comments by the Commonwealth's attorney do not constitute reversible
> error unless the "unavoidable effect of such comments would be to prejudice the
> jury, forming in their minds fixed bias and hostility toward the defendant so that
> they could not weigh the evidence objectively and render a true verdict."
> *Commonwealth v. Anderson*, 461 A.2d 208, 211 (Pa. 1983) quoting *Commonwealth
> v. Van Cliff*, 397 A.2d 1173, 1176 (Pa. 1979). In *Anderson* it was alleged that trial
> counsel was ineffective for failing to request a mistrial after objectionable remarks
> were made by the Commonwealth during summation. [*Id.* at 213]. Trial counsel
> testified that he believed he was winning the case and therefore did not request a

mistrial. *Id.* The Pennsylvania Supreme Court found this to be a reasonable basis for electing not to move for a mistrial. [*Id.* at 215.]

Similarly, [trial counsel] testified [at the PCRA hearing] that her belief at the time of the comments was that the trial had gone well and she made a tactical decision to not move for mistrial. Such a belief was, perhaps with the benefit of hindsight to some degree, borne out by the fact that the jury did indeed render not guilty verdicts for the lead charges of burglary and criminal trespass. Thus, we find [trial counsel] had a reasonable basis for not pursing a mistrial and do not find that the failure to request a mistrial was ineffective assistance of counsel where she: 1) made a timely objection, 2) received a favorable ruling and (3) the Court gave a curative instruction not once but twice in the midst of the Commonwealth's summation. Additionally, [trial counsel] testified that although it was not her intention[,] she believed that her objections may have benefited [Petitioner] to some degree in that they may have blunted the effectiveness of the Commonwealth's argument. For these reasons, we decline to afford relief.

(Resp's Ex. 23, PCRA Ct. Op., ECF 35-23 at 8-9.)

On appeal, the Superior Court adopted in full the PCRA court's analysis. It also added that Petitioner failed to satisfy *Strickland's* prejudice prong. (Resp's Ex. 28, *Brages II*, ECF 35-28 at 8-9.)

The Superior Court's decision to deny this claim easily survives AEPDA standard of review at § 2254(d)(1), which is the provision to this Court's review of this claim. Because the Superior Court applied the *Strickland* standard to this claim, its decision was not "contrary to" the governing Supreme Court law. *Williams*, 529 U.S. at 406. Nor was it an "unreasonable application of" the *Strickland* standard for the following reasons.

The decision of trial counsel to object to the prosecutor's statements and receive a curative instruction rather than move for a mistrial is precisely the type of strategic decision that the Supreme Court in *Strickland* held to be protected from second-guessing. 466 U.S. at 690-91. The Supreme Court has explained that "[e]ven under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance

after conviction or adverse sentence.'" *Richter*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689). When AEDPA's standard or review applies, as it does here, the burden upon a petitioner "is all the more difficult." *Id.* That is because:

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*, 466 U.S.] at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. [*Id.*] Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (parallel citations omitted).

Here, the Superior Court agreed with the PCRA court that trial counsel's response to the prosecutor's comments fell within the wide range of reasonable professional assistance. It also concluded that Petitioner was not prejudiced by trial counsel's decision not to move for a mistrial. The Superior Court's reasoning was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Thus, Petitioner has not satisfied his burden of demonstrating that the Superior Court's adjudication of this was an "unreasonable application of" *Strickland*.

In conclusion, Petitioner's claim that trial counsel was ineffective for failing to move for a mistrial is denied because the Superior Court's adjudication of it withstands review under § 2254(d)(1).[11]

---

[11] Petitioner argues in his Brief that direct appeal counsel should have claimed on direct appeal that the trial counsel was ineffective for failing to move for a mistrial. (ECF 31 at 27.) Direct appeal counsel could not do so, however, because in Pennsylvania a defendant typically may not litigate ineffective assistance of trial counsel claims on direct appeal. Such claims must be raised in a *Footnote continue on next page…*

3.  Failure to Present a Corroborating Witness or Other Evidence to Support the
     Defense that the Cash Found on Petitioner Was From a Tax Refund

Although it is not entirely clear, it appears that Petitioner is claiming, as he did in his PCRA

proceeding, that trial counsel was ineffective for failing to call as a defense witness his ex-wife,

Melanie Pinette, or obtain documents from her, to corroborate Petitioner's defense.[12] (ECF 3 at 8;

ECF 31 at 17.) At the PCRA hearing, Petitioner testified that if his ex-wife had been called to

testify at his trial, she would have corroborated his trial testimony that most of the cash found on

his person on June 5, 2012, was from his tax refund which had been directly deposited into her

bank account and which she then gave to him. (Resp's Ex. 22, PCRA Hr'g Tr., ECF 35-22 at 29.)

Petitioner did not presented testimony from his ex-wife at the PCRA hearing or submit any tax

documents to support his claim. When asked why did not do so, Petitioner stated that he did not

know how to contact his ex-wife. However, he also admitted that they have children together and

that he speaks with their children. (*Id.*)

During her PCRA testimony, trial counsel stated that Petitioner advised her before the trial

that he received cash from a tax refund and that an ex-wife or ex-girlfriend could verify that fact.

(*Id.* at 8-9.) But trial counsel also explained that Petitioner's statements to her about where the

cash came from was inconsistent. (*Id.* at 13.) Trial counsel therefore advised Petitioner to provide

her with paperwork that supported his claim, and that he also should contact any individual who

could testify in support of it and have that individual contact her. Petitioner did none of these

---

PCRA proceeding. *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002) (abrogated in part on other
grounds by *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021)).

[12] The Court notes that in his Petition (ECF 3) and Brief in Support (ECF 31), Petitioner faults trial
counsel for not presenting "a corroborating witness," he does not identify the individual he believes
trial counsel should have called as a defense witness. The Court presumes that the "corroborating
witness" is his ex-wife, since that is the individual Petitioner claimed in his PCRA proceeding who
trial counsel should have interviewed and presented testimony from at his trial.

things. (*Id.* at 13-14.) Trial counsel stated that she therefore did not investigate the issue further because it could impede her ability to present Petitioner's testimony at trial if she became aware that he intended to perjure himself. (*Id.* at 14.)

The PCRA court expressly determined that trial counsel's PCRA testimony was credible and that Petitioner's was not. It held:

> [Trial counsel] indicated that the facts she heard from [Petitioner] regarding the tax return did not remain consistent and that she feared it may be an unwise strategy to present it if [Petitioner] took the stand. We found [trial counsel's] testimony credible in all respects.
>
> [Petitioner] testified that the unnamed witness was Melanie Pinette, his ex-wife. As far as he knew she had a house in Harrisburg or Mechanicsburg. He did not indicate any number or address for her. He indicated that the tax return was deposited in her bank account and then she took $1,000.00 and he kept $5,000.00. No evidence outside of [Petitioner's] testimony was presented regarding the existence of this person. We do not find [Petitioner] credible with regard to this witness. Moreover, there was no evidence presented that this witness was available to testify or willing to testify, assuming arguendo, that she exists. The absence of this witness was not shown to this Court to be so prejudicial as to have denied Petitioner] a fair trial. Without any credible evidence about this witness, we cannot speculate as to her importance at trial. There is no way to gauge the credibility or the weight the jury would have given to this witness. For these reasons, we find [Petitioner] fails to meet all three prongs of the ineffectiveness standard discussed above.

(Resp's Ex. 23, PCRA Ct. Op., ECF 35-22 at 5-6.)

The Superior Court adopted the PCRA Court's disposition of this claim in full. (Resp's Ex. 28, *Brages II*, ECF 35-28 at 5-6 ("We agree with the PCRA court's sound rationale and determination, and affirm on this basis[.]") Because the Superior Court denied this claim based on the credibility determinations made by the PCRA court and Petitioner's failure to produce any credible evidence to support this claim, the two provisions of AEDPA that pertain to findings by the state courts–§ 2254(e)(1) and § 2254(d)(2)–apply to this Court's review of this claim. Petitioner has not met his burdens under these sections of the federal habeas statute.

As discussed above, under § 2254(e)(1) this Court is bound by the credibility determinations and findings of fact that the PCRA court made unless Petitioner produced "clear and convincing evidence" that the PCRA court was wrong. *See also Vickers*, 858 F.3d at 850 n.9 (even in pre-AEDPA cases, "'federal habeas courts [had] no license to redetermine credibility of witnesses who demeanor ha[d] been observed by the state trial court, but not by them'") (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (bracketed text added by the Court of Appeals)). Petitioner has not directed his Court to the "clear and convincing evidence" required under § 2254(e)(1) to rebut the presumption of correctness that this Court must afford the PCRA court's credibility determinations.[13] Petitioner likewise has not shown that the Superior Court's adjudication of this claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Superior Court had before it the requisite evidence necessary for its adjudication to withstand review under § 2254(d)(2)'s deferential standard.

The Superior Court's adjudication also withstands review under § 2254(d)(1), which applies to mixed questions of law and fact. Petitioner has not shown that its decision to deny this claim was either "contrary to" or "an unreasonable application of" *Strickland*.

In conclusion, this claim is denied because this Court is bound by the credibility determinations made by the PCRA court under § 2254(e)(1) and because the Superior Court's adjudication of it survives review under § 2254(d)(1) & (2).

---

[13] Although there can be the rare case in which "[a] federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable [under § 2254(d)(2)] or that the factual premise was incorrect by clear and convincing evidence [under § 2254(e)(1)]" *Miller-El*, 537 U.S. at 340, this case is not one of them. There is no basis on the record before this Court to determine that Petitioner has overcome AEDPA's deference to the PCRA court's factual determinations.

4.  <u>Claims of Ineffective Assistance that Petitioner Did Not Litigate in State Court</u>

Petitioner raises two claims of trial counsel's ineffectiveness that he admits are procedurally defaulted because he failed to raise them in his PCRA proceeding.[14] (ECF 31 at 11-17, 28, 40-58.) These claims are that trial counsel was ineffective because she failed to: (1) move for the suppression of statements Petitioner gave to Officer Kesslak by arguing that they were obtained in violation of the rule established in *Miranda v. Arizona*, 384 U.S. 436 (1966); and (2) challenge the allegedly deficient affidavits of probable cause prepared by Officer Kesslak. (ECF 31 at 18, 40-58.)

Petitioner asserts that he can overcome the default of these two claims under the rule established by *Martinez* because PCRA counsel was ineffective for failing to raise them in the Amended PCRA petition. (*Id.* at 27-28.) However, since the Court can avoid the issue of procedural default altogether and simply review the claims at issue de novo and deny them on that basis, the Court will do so here. *Lambrex v. Singletary*, 520 U.S. 518, 525 (1997) (the court may avoid the more complex issue of procedural default and evaluate the claim on the merits if it is more efficient to do so).

---

[14] Petitioner also asserts generally that trial counsel did not sufficiently consult him before his trial, adequately prepare for trial and "failed to subject the prosecution's case to meaningful adversarial testing." (ECF 31 at 12-17.) As Respondents point out, Petitioner did not properly exhaust this claim in his PCRA proceeding and, in event, such broad allegations are too boilerplate to state a claim for federal habeas relief. Although pro se filings must be construed liberally and with a measure of tolerance, Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts requires that a habeas petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." Merely asserting legal conclusions does not fulfill the requirements of Rule 2(c). *Mayle v. Felix*, 545 U.S. 644, 649 (2005). Broad, general allegations that trial counsel was unprepared, failed to consult Petitioner or sufficiently subject the prosecution's case to adversarial testing lack the required specificity to raise a valid habeas claim. *Id.* at 656.

The Court first turns to Petitioner's defaulted claim that trial counsel was ineffective for failing to raise a *Miranda* issue in the pretrial suppression motion.[15] By way of background, when Officer Kesslak stopped Petitioner on June 5, 2012, he asked Petitioner for his driver's license. Officer Kesslak then radioed Cambria County 911, which ran Petitioner's information through the CLEAN NCIC system. Officer Kesslak then was informed that Petitioner had an outstanding warrant for his arrest issued by Dauphin County for seven crimes. (Resp's Ex. 4, Suppression Hr'g Tr., ECF 35-4 at 7-11; Resp's Ex. 5, Trial Ct. Op., ECF 35-5 at 3-4.)

After Officer Fisher arrived at the scene, Officer Kesslak secured Petitioner and patted him down, and it was at this time that the large amount of cash—which created a bulge in the pocket area—was discovered in Petitioner's front pocket. After that pat down, Petitioner voluntarily consented to have his backpack searched, and that is when the many tools and the rolls of wrapped coins were discovered. Officer Kesslak then took Petitioner into custody on the Dauphin County warrant. At the police office, arrangements were made to transport Petitioner to Dauphin County on that outstanding warrant. The officers inventoried Petitioner's belongings at that time. At some point, the officers asked Petitioner how much cash was on him. He did not give them an accurate account. He also discussed with the officers where the cash came from. (*Id.*; Resp's Ex. 5, Trial Ct. Op., ECF 35-5 at 3-4.)

As previously discussed, trial counsel moved, unsuccessfully, to suppress all the physical evidence and statements obtained from Petitioner on June 5, 2012, on the grounds that Officer Kesslak violated his rights under the Fourth Amendment because he lacked either reasonable

---

[15] In his Brief, Petitioner states "that he does have higher education, [and] would like to think that he's fairly intelligent, despite all the stupid things he does[.]" (ECF 31 at 48.) He also states that he "has been arrested quite a lot over the years" and that he "is aware of *Miranda* and statements being used against him[.]" (*Id.*) He does not explain why he then made any statements to Officer Kesslak during the relevant time, however.

suspicion or probable cause to stop him. Petitioner now argues that trial counsel performed deficiently because she should have argued that Petitioner's statements about the amount of cash he had on him and where that cash came from should be suppressed because Officer Kesslak did not read him his *Miranda* rights. (ECF 31 at 40-50.)

The Court will assume solely for the sake of argument that there was a meritorious *Miranda* issue that trial counsel could have raised in a suppression motion and that, if she had raised it, one of more of Petitioner's statements to Officer Kesslak would not have been introduced at the trial. The Court will make this assumption because Petitioner has not shown that he was prejudiced by trial counsel's alleged deficient performance. Importantly, Petitioner does not argue that any of the *physical evidence* introduced at his trial would have been suppressed under *Miranda*. The cash, rolled coins and tools that Petitioner had on his person on June 5, 2012, together with the testimony given at his trial by Boring, Petersen and Mardis, was by far the most damning evidence of Petitioner's guilt. Thus, Petitioner has not shown a reasonable probability that the outcome of his trial would have been different had trial counsel moved to suppress one or more of his statements under *Miranda*, and this claim fails for that reason. *Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999) ("It is firmly established that a court must consider the strength of the evidence in deciding whether the *Strickland* prejudice prong has been satisfied.").

In his other defaulted claim, Petitioner contends that trial counsel was ineffective in failing to challenge the omission, from the affidavits of probable cause supporting both the search warrant for his personal property and the later warrant for his arrest, of the fact that two workers were present and left alone in Boring's home on June 5, 2012. (ECF 31 at 50-58; Resp's Ex. 2, Affidavits of Probable Cause, ECF 35-2 at 1-4.)

Any claim, including a claim of trial counsel's ineffectiveness, that is premised on the allegation that the police lacked probable cause to arrest and detain Petitioner as a pretrial detainee was rendered moot by his subsequent conviction, since his custody is now the result of the judgment of sentence imposed following his trial. *See also United States v. Mechanik*, 475 U.S. 66, 70 ("the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt."); *United States v. Tulk*, 171 F.3d 596, 598 (8th Cir. 1999) ("any injury sustained in the charging process is cured by a subsequent finding of guilt beyond a reasonable doubt"); *Smith v. Nish*, No. 2:07-cv-1279, 2008 WL 4616850, *13 (W.D. Pa. Oct. 16, 2008) (citing case for the proposition that, because a criminal defendant has no constitutional right to a preliminary hearing, *Gerstein v. Pugh*, 420 U.S. 103 (1975), the petitioner's claim that he should not have been bound over for trial because probable cause had not been established, raised only an issue of state law and could not support federal habeas corpus relief). Thus, to the extent that Petitioner challenges trial counsel's performance with regard to his arrest, that claim is moot.

As for Petitioner's challenge to Officer Kesslak's search warrant, if trial counsel had argued in a pretrial motion to suppress, as Petitioner contends she should have, that the officer's accompanying affidavit of probable cause *omitted* information about the workers, the trial court would have evaluated whether the affidavit would have provided probable cause if it had contained a disclosure of the omitted information. *See, e.g.*, *Commonwealth v. Taylor*, 850 A.2d 684, 687-88 (Pa. Super. Ct. 2004); *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993). Here, the two workers who were at Boring's home around the time his cash and coins were stolen were there to fix an elevator. Boring and his wife left them alone in the house because they needed to attend his wife's doctor's appointment. Boring knew the workers personally because he used to be their

baseball coach and he knew their father. He had also left them alone in his home on three or four prior occasions without incident. (Resp's Ex. 6, Trial Tr. I, ECF 35-6 at 152-57.) In contrast, Petitioner had been found in the area near the crime because he matched the description given by Peterson in his 911 call. He had a large amount of cash on him as well as wrapped coins, all of which was consistent with that which Boring had reported stolen from his home.

In light of these circumstances, the fact that two workers had been present and alone in Boring's home would not have been sufficient to defeat the existence of probable cause as to Petitioner with respect to the search warrant (or the arrest warrant, for that matter). Petitioner has thus failed to show that there is a reasonable probability that the outcome of his trial would have been different had trial counsel challenged the omission of information about the workers from the affidavit of probable cause.

Based on the above, Petitioner's claims that trial counsel was ineffective for failing to move to suppress his statements under *Miranda* and to challenge the affidavits of probable cause are denied because they have no merit under de novo review.

## III.   Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from…the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying this standard here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied for the reasons given above. Accordingly, the Court will not issue a certificate of appealability on any of Petitioner's claims.

## IV.   Conclusion

Based upon the foregoing, the Court will deny each of Petitioner's habeas claims and will deny a certificate of appealability with respect to each claim.

An appropriate Order follows.


Date:  April 11, 2022                                          /s/ Patricia L. Dodge
                                                              PATRICIA L. DODGE
                                                              United States Magistrate Judge